## The Inhabitants of IPSWICH, Petitioners &c.

In the act incorporating the town of Hamilton the boundary line is described as " run ning by Ipswich river to a wall &c., then by said wall " &c. The wall was nearly at right angles to the river and from the end of it was a wooden fence about two rods, and beyond that the bank was so steep that a fence was unnecessary. It was *held* that the boundary line did not cross the river diagonally to the end of the wall, but that it followed the thread of the river until it came to the point at which the wall, if protracted, would intersect the thread of the river, and thence, making an angle, it took the line of the wall.

Where a road is laid out in two towns, and, in consequence of their neglecting to make it, the county commissioners cause it to be made and apportion the expense upon the towns, it is not only competent but necessary that the commissioners should ascertain and determine the boundary line between the towns, as incidental to a just and legal apportionment.

The provision in *St.* 1827, *c.* 77, § 7, that if the towns whose duty it is to make a road, shall not complete it in the time and manner prescribed by the commissioners, the commissioners shall cause it to be completed and at the *next* regular meeting shall order the expenses to be paid out of the county treasury, and shall order no- tice thereof to be given to the towns so delinquent and of the part thereof which each town is to pay, and if not paid, shall issue a warrant of distress, is only direc- tory. If therefore these proceedings cannot be had at the next regular meeting of the commissioners, or if they are quashed for irregularity, it is competent to the commissioners to institute them at a subsequent period.

PETITION for certiorari ; setting forth, that on the second Monday of April 1829 the county commissioners adjudged a highway, causeway and bridge leading through the towns of Ham- ilton and Ipswich and over Ipswich river, the thread of the channel of which divides those towns, to be of common conve- nience and necessity, and ordered those towns to construct each so much thereof as came within its limits ; that a dis- agreement of opinion as to the boundary line between the towns ensuing, neither of them constructed any part of the bridge or of the causeway immediately connected therewith at each end thereof ; that the commissioners thereupon caused the same to be constructed, and drew their warrant for the expense, upon the county treasurer, and at their July term 1832 ordered that the whole expense of constructing the bridge should be borne and reimbursed by Ipswich, and issued a notice that if the same should not be paid, with ten per cent. interest, before the next term of the commissioners' court, a warrant of distress should issue against the town ; that if the petitioners are legally liable to pay for any thing,

(which they deny,) they are liable to pay the expense of constructing so much only of the bridge as lies within the limits of Ipswich, without interest ; that the thread or middle of the channel of Ipswich river, is the dividing line between the towns, and that that line, thus defined, places about two thirds of the bridge within Hamilton ; that the petitioners applied to the commissioners to be permitted to show the true boundary line, and thus to ascertain the relative liabilities of Ipswich and Hamilton, but that the commissioners declined taking cognizance of that question ; and that on the 30th of October 1832 a warrant of distress for the whole expense of the bridge, will issue against the petitioners. And the petitioners pray, that a rule may be granted against the commissioners, and an order of notice on the town of Hamilton, to show cause why a mandamus should not issue to the commissioners, commanding them not to issue a warrant of distress against the petitioners, or to issue one for so much only of the whole expense, without interest, as applies to the part of the bridge lying within Ipswich, the line being ascertained by this Court or by the commissioners, and to show cause also why a certiorari to quash the judgment and order of the commissioners against Ipswich, made in July 1832, and their judgment and order that a warrant of distress issue, should not be granted.

The commissioners filed an answer, stating, among other things, that at their July term it was adjudged that the town of Ipswich should pay $ 2622·50 and the town of Hamilton, $ 867, as their respective proportions of the aggregate expense of constructing the road, bridge and causeway, and that they gave notice to them that unless those sums should be paid before the next regular term of the commissioners' court, a warrant of distress would issue against the delinquent town ; and that at the October term 1832, held by adjournment on the 30th day of October, the town of Ipswich having neglected to pay the sum assessed to it, the commissioners ordered a warrant of distress accordingly. And as to the boundary line between the towns, the commissioners say that they do not undertake here to decide where the line runs ; that if the thread of the river is the boundary,

they have received no information where the thread of the river is, nor do they admit that it is the ascertained boundary ; that on this point there has been, during all the proceedings in relation to the road, a controversy between the two towns ; and that the commissioners have neither the means nor the power to ascertain and establish the boundary line.

The commissioners, in their answer, refer to a petition presented to them by the town of Ipswich on the 9th of October 1832, and dismissed by the commissioners, in which it is alleged that a large part of the bridge is within the town of Hamilton, and that the proceedings of the commissioners have been irregular and erroneous ; and the petitioners pray to be permitted to show, by reference to the act of the legislature incorporating the town of Hamilton, that the middle of the channel of Ipswich river is the boundary line between the two towns ; and they further pray, that if a warrant of distress shall be ordered to issue, it may be only for so much of $ 2622·50 as was necessary to be applied to building that part of the bridge which lies within Ipswich, without ten per cent. interest ; they protest however that no such warrant ought to issue.

At the hearing before this Court the petitioners introduced *Nov. 10th.* several depositions, in order to show that the boundary line was the thread of the river. They also referred to *St.* 1793, *c.* 10, incorporating Ipswich Hamlet, in the town of Ipswich, into a separate town by the name of Hamilton, by which the limits of Hamilton are described as follows ; — " Beginning at Dodge's stump, so called, where Manchester and Wen ham lines meet ; thence running westerly, northerly and easterly, by Wenham and Topsfield lines, and by Ipswich river, to a wall about ten chains below Barnabas Dodge's mills ; then by said wall," &c.

*Choate*, for the petitioners, cited to the point that the middle of the stream was the boundary line, 3 Kent's Com. 345, 346 ; *Ex parte Jennings*, 6 Cowen, 518, 548, note ; *Claremont* v. *Carlton*, 2 N. Hamp. R. 369 ; *Rix* v. *Johnson*, 5 N. Hamp. R. 520 ; *Lunt* v. *Holland*, 14 Mass. R. 149 ; *Morrison* v. *Keen*, 3 Greenl. 474 ; and he contended that

Ipswich,
Petitioners
&c.

the commissioners ought to have determined the boundary line.

*Gerrish* and *Cushing*, for the respondents. It was the duty of the petitioners, pursuant to the order of the commissioners, to have constructed so much of the road and bridge as was laid out within the limits of Ipswich, and not having so done they are by their own laches precluded from objecting to the proceedings of the commissioners. *Boxford* v. *Essex County Commissioners*, 7 Pick. 333 ; *Freetown* v. *Bristol County Commissioners*, 9 Pick. 51. The boundary line should have been ascertained by the towns themselves. The petitioners are further guilty of laches in not tendering, before the October term 1832 of the commissioners' court, so much as they considered to be their proportion of the expense.

The warrant of distress has already issued against the petitioners, and it is therefore too late to grant a mandamus as prayed for.

If the proceedings shall be quashed upon certiorari, the effect will be, through the laches of the petitioners, to throw upon the county the whole expense of making the road and bridge ; for by *St.* 1827, *c.* 77, § 7, when a road has been constructed by the commissioners, their order requiring a delinquent town to pay the expense, must be made at their *next* regular term, and it cannot be made at any subsequent period.

But if it was incumbent on the commissioners to determine the boundary line, they have done it incidentally by the apportionment. In general, where a river runs between two towns, the thread of the river is the boundary ; but this may be rebutted. Here there is no thread of the river at the place where the bridge is situated, the water being a mill pond, and to pursue the *St.* 1793, *c.* 10, the boundary line is to be drawn from some point above the bridge to the wall, which stands on the Ipswich side of the river and more than two rods distant from the bank, and a line so drawn places the greater part of the bridge within the limits of Ipswich. *Lunt* v. *Holland*, 14 Mass. R. 149.

*Choate*, in reply, said that there was no laches on the part

of the petitioners ; that upon the towns' omitting to construct the road and bridge, the commissioners were authorized to do the work and assess the expense, with ten per cent. interest, upon the towns, and this was the whole penalty for their neglect ; and that so soon as the petitioners were aggrieved by an order of the commissioners, apportioning the expense, they applied to be heard on that subject, but their petition was dismissed.

SHAW C. J. drew up the opinion of the Court. The first question which the Court has been called upon to consider is, where the dividing line is between the towns of Ipswich and Hamilton. This depends upon the construction of the statute by which the town of Hamilton, formerly making with Ipswich one town, was set off into a separate town. Several depositions were taken and read in the cause, but we have considered them of very little importance, except so far as they show the localities, and thereby show the application of the provisions of this act of incorporation. In regard to these facts, however, there is no contradiction.

The act is the act incorporating the parish of Ipswich Hamlet, in the town of Ipswich, into a town by the name of Hamilton. *St.* 1793, *c.* 10, § 1.

The boundaries, so far as the description affects the present question, are thus described. " Beginning at Dodge's stump, so called, where Manchester and Wenham lines meet, thence running westerly, northerly and easterly by Wenham and Topsfield lines, *and by Ipswich river, to a wall about ten chains below Barnabas Dodge's mills ; then by said wall,*" &c.

The question depends upon the construction of the clause in Italics. The road crosses the river at a short distance above the mills, called in the act Dodge's mills, and sometimes called Smith's mills. At that place, then, the river constitutes the dividing line between the two towns.

It is not denied on the part of the town of Hamilton, who were notified, and who are in effect the parties in interest, that as a general rule, where a boundary line runs by a river, the central line or thread of the river, the *filum aquæ*, is in tended.

But they contend, that by this description, as the boundary is " *by the river to a wall*," and this wall is upon the bank of the river, on the Hamilton side, the whole body of the river must be, for some distance at least above this point, within the town of Ipswich, and that at the point where the new bridge is built, the river, by a fair construction, must be taken to be more than one half in the town of Ipswich.

The relative position of the wall and the river are thus described substantially by one who has known them intimately sixty years. The wall being nearly at right angles to the river, continued down towards the river, it ended where there is a stone marked I. H. now standing. That was the end of the wall. From the end of the wall there was a wooden fence about two rods, and beyond that the bank was so steep that a fence was unnecessary. The wall was built as far as the land would admit of its standing strong. It was a broken kind of bank ; the wall was built, until the wall beyond began to fall or pitch. I understand that the stone above named marks the spot designated in the act of incorporation as " the wall," and stands on the brow of the bank on the Hamilton side of the river a few rods from the water.

Upon these facts, how does the boundary line run, as contemplated by the statute ? So far as it runs " by the river," which is understood to be for a considerable distance above Dodge's mills and above the new bridge, it must be governed by the general rule, the central line of the river, to be ascertained, in the usual manner, at each particular point of the river, in regard to which the question may arise. But the question is, where does the line leave the central thread of the river, and cross the right bank of it to the wall ? We think it very clear, that it must at a point directly opposite to the end of the wall ; or at that point at which the line of the wall, if protracted at right angles with the river, would intersect the central line of the river.

The description in the statute cannot literally apply, because a line extending and continuing by the river, can never actually touch the wall, at three rods from it. It must therefore have a reasonable construction, in order to carry into effect the intent of the legislature. This both parties admit ;

one contending that it leaves the thread of the river, at some indefinite point above the mills and the bridge, and runs by a very acute angle, to the end of the wall, where the bound stone now stands ; the other party insisting that it must follow the thread of the river until that description becomes inapplicable, and it is necessary to leave for the wall which is the bound given, and that is at a point opposite to the wall. And we are of opinion that the latter is the most reasonable and probable construction, and therefore the one intended by the legislature.

Several reasons favor this construction.

As the legislature assumed the river as a natural and convenient boundary, it is to be presumed that that boundary was to be continued as far as it could be, that is, as far as the river runs in the same direction in which it was intended that the new town should extend.

Again, as the description in the act of incorporation is incomplete and leaves a hiatus to be supplied, that construction seems most to comport with the intention of the legislature, which leaves the defect in the line described the shortest and smallest.

It seems probable that the end of this wall was taken as the nearest permanent object, and the nearest point at which a permanent monument could be fixed ; it being inconvenient to fix a permanent bound mark in the water, or upon the precipitous banks of the river. This is the more probable, as the line was here to take a new direction, and that direction was to be given by the course of this wall.

The other construction seems to have nothing to recommend it. If the line might leave the centre of the river and take a direction diagonally towards the wall at ten rods above, why not at fifty or a hundred or a mile above ? It would render that part of the description " by the river," vague, indefinite and ambiguous, and that without necessity or use.

The difficulty has probably arisen from a slight inaccuracy in the wording of the description. Had it said, by the river to a point in a line with the wall &c., and thence by the wall &c., it would have precluded all doubt. As it is, we think

the meaning is the same, and as something must be supplied by construction, this construction will most effectually accomplish the purpose of the legislature.

From this view of the question of boundary, it follows as a necessary consequence, that all the expense of constructing that part of the bridge which lay on the south side of the central line of the river, was properly chargeable to the town of Hamilton, and that part only which lay on the northerly side of the same line, was chargeable to the town of Ipswich ; and it was not only competent to, but necessary that the commissioners should ascertain and determine the boundary line between the two towns, so far as this question was concerned, as incidental to a just and legal apportionment of the expense. The statute is express, that where the commissioners have caused the work, which the towns ought to have done but have failed to do, to be done and paid for out of the county treasury, they shall give notice of the expense to the delinquent towns *and the part thereof* which each town is to. pay. *St.* 1827, *c.* 77, § 7. The object is. to reimburse the county, and to compel each town to pay for what it originally ought to have done at its own expense, and in the not doing of which it is delinquent, and that is, to repay all the expense of doing the work within its own limits. When therefore the commissioners are required to apportion this expense, they must necessarily determine what proportion of the expense was incurred upon one side, and what upon the other side of the boundary line, and of course where that line is. Such decision would be conclusive only to the extent of the subject matter before the commissioners.

Considering that it is apparent from the proceedings and the answer of the commissioners, that they did not ascertain and decide upon the boundary line, before making the apportionment of the expense of the bridge, which crossed that dividing line, and which was an expensive structure, and consequently that the expense may not have been justly and legally apportioned, we are of opinion that the proceedings of the commissioners in directing a warrant of distress at their session in October last, and also their proceedings making the apportionment at their session in July last, are erro-

neous and ought to be quashed, and that a writ or writs of certiorari issue for that purpose.

Another question was raised and discussed, upon which it seems proper to express an opinion.

The provision of the statute already cited is, that if the towns whose duty it is to make the roads and bridges required, shall not make and complete the same, within the times and in the manner prescribed by the commissioners, the commissioners shall cause the same to be completed and at their *next* regular meeting shall order the expense thereof to be paid out of the county treasury and shall order notice thereof to be given to the towns so delinquent, and the part thereof which each is to pay. And if such town do not before the next regular meeting pay &c., the commissioners shall issue a warrant or warrants &c.

The argument at the hearing was, that as these proceedings were to be had at the *next* regular meeting, the power of the commissioners to apportion these expenses upon the towns and cause a reimbursement thereof to the county treasury, was limited to such next regular meeting, and that if these proceedings were not then had, the expense in question must remain as a charge upon the county, and the commissioners would have no authority to apportion it upon the towns.

But the Court do not so understand the provisions of this statute. The great object and purpose of the act was, to secure the prompt and immediate performance of the duties of towns in the construction of highways, adjudged to be of common convenience and necessity, to give the towns an opportunity to construct them by their own labor and means, if they would do so without delay, but on their failure it was not intended to await the slow and uncertain process of penal laws, but to cause the work to be done at the expense of the towns charged with the duty. This object would often be defeated, upon the construction contended for. But we are of opinion that the provision of the statute requiring notice &c. at their next regular meeting, is directory to the commissioners, not restrictive of their powers. If therefore, from any cause, these proceedings cannot be

Ipswich,
Petitioners
&c.

had at the next term, or if, as in the present case, they should be quashed for irregularity, it is competent to the commissioners to make a new apportionment, and order for payment, and upon failure, to issue a warrant of distress, pursuant to the statute.

And the Court are further of opinion, that after the records of the two orders have been brought into this Court, and the proceedings thereon quashed, it will be competent for the commissioners to make a new order of apportionment; and if necessary, a writ of mandamus from this Court may issue to the commissioners requiring them to proceed and make such order.